*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. B. CAMPBELL, Minor.

UNPUBLISHED
April 25, 2019

No. 344885
Wayne Circuit Court
Family Division
LC No. 16-523689-NA

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Respondent appeals by right an order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(b)(*i*), (g), (h), (j), (k)(*ii*), (k)(*ix*), and (n)(*iii*).[1] We affirm.

## I. BACKGROUND

This case arises from an original petition seeking termination of respondent's parental rights to the child at the initial dispositional hearing. Respondent is also the father of the child's mother, TDB.[2] At the adjudication trial, petitioner presented evidence that respondent was convicted in Maryland of sexual abuse and rape of TDB when she was a minor, resulting in TDB giving birth to the child at issue in this case. Respondent does not dispute that he is the child's father, but denied that he sexually abused TDB; however, the trial court precluded him from re-litigating his Maryland convictions at the adjudication trial and the termination hearing. After a jury found grounds for jurisdiction, the trial court determined that there were statutory grounds to terminate respondent's parental rights. Then, after a best-interest hearing, the court terminated respondent's rights to the child.

---

[1] As discussed further below, MCL 712A.19b was amended by 2018 PA 58, effective June 12, 2018, following entry of the order appealed in this case. Subdivision (n)(*iii*) now appears at Subdivision (m)(*iii*). Other changes to the statute are noted below.

[2] Petitioner also sought termination of respondent's parental rights to TDB. The trial court, however, ultimately declined to terminate respondent's parental rights to TDB because she was 18 years old at the time of the termination hearing. TDB is not a party to this appeal.

## II. DUE PROCESS AND DENIAL OF MISTRIAL

Respondent first argues that he was denied a fair trial by (1) the trial court's decision to read all of his criminal convictions to the jury pool, (2) the trial court's decision to strike TDB's testimony and deny respondent's request for a mistrial, (3) the trial court's decision to allow TDB's lawyer-guardian ad litem (LGAL) to continue after she acknowledged an attorney-client breakdown, and (4) the parties' and trial court's use of the term "rape" in front of the jury. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent did not object to the trial court's reading of his criminal convictions to the jury pool, the continuation of TDB's LGAL, or the use of the word "rape" in front of the jury. Therefore, these arguments are unpreserved. Respondent, however, did object to the trial court's decision to strike TDB's testimony, and he requested a mistrial, which the trial court denied. Therefore, those arguments are preserved.

"Generally, whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *Id.* This Court, however, reviews unpreserved claims of constitutional error for plain error affecting substantial rights. *Id.* In *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008), this Court explained:

> Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. When plain error has occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." [Citations omitted; alterations in original.]

This Court reviews a trial court's decision to exclude evidence for an abuse of discretion. *In re MU*, 264 Mich App 270, 276; 690 NW2d 495 (2004). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcome." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009) (quotation marks). This Court also reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003); *In re Dearmon*, 303 Mich App 684, 695; 847 NW2d 514 (2014) (applying the abuse of discretion standard to the review of the denial of a motion for a mistrial in a child protective proceeding).

## B. READING OF RESPONDENT'S CRIMINAL CONVICTIONS TO POTENTIAL JURORS

At the start of the adjudication trial, the trial court read the allegations of the termination petition to the potential jurors. Those allegations included all of respondent's criminal convictions. The trial court, however, instructed the jury that it was "not to conclude any of this is actually factual until there's evidence presented on these facts." During trial, petitioner only introduced into evidence respondent's Maryland convictions.

Respondent argues that reading his convictions to the jury pool was fundamentally unfair and denied him due process. Respondent, however, fails to argue, or establish, how the alleged error affected the outcome of the proceedings when the jury was instructed not to consider the allegations as fact unless evidence was presented to support them, and such evidence was indeed presented. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Therefore, respondent fails to establish plain error affecting his substantial rights.

## C. STRIKING OF TDB'S TESTIMONY AND DENIAL OF MISTRIAL

Respondent next argues that the trial court denied him the ability to present a defense by striking TDB's testimony and the trial court should have granted his motion for a mistrial.

## 1. BACKGROUND

Respondent called TDB as a witness at the adjudication trial. TDB testified that she would be 18 years old in seven days and that she had custody of the child, who was four years old. She testified that she did not believe that there was any possibility that respondent would rape, abuse, or neglect the child. TDB further testified that, based on her experience, she did not believe that respondent would rape, abuse, or neglect any child. TDB did not want the child to be under the supervision of the Department of Health and Human Services (DHHS). TDB did not believe that the child would be at risk of any harm in respondent's care or custody. TDB testified that she lived with respondent in Washington, D.C., for more than a year and there was never a moment when she did not want to be there.

TDB's LGAL objected to TDB's testimony and, outside the presence of TDB and the jury, TDB's LGAL informed the trial court that she believed that TDB was perjuring herself. She requested that another attorney be appointed to represent TDB. Petitioner argued that respondent's attorney from Maryland had contacted TDB and that respondent sent a subpoena to TDB's home, which was the reason TDB was testifying in the manner that she was. Petitioner argued that to avoid a mistrial, respondent should not be allowed to further cross-examine TDB. TDB's LGAL requested a mistrial and argued that she had a conflict of interest as TDB's lawyer and GAL. The child's LGAL informed the trial court that based on TDB's testimony, the child was at risk in her care, and TDB would likely become a respondent. Petitioner reiterated its position that a mistrial could be avoided if no further questions were asked. The child's LGAL requested a mistrial. Respondent requested an evidentiary hearing. The trial court appointed separate counsel for TDB; however, TDB's LGAL stated that she would not be able to represent TDB in any capacity. Respondent then moved for a mistrial based on the interruption of his examination of TDB.

The next day petitioner requested that the trial court strike TDB's testimony on the basis of witness intimidation. Petitioner argued that respondent had sent "an extremely menacing letter" to another one of his daughters, which included a coded letter, and invited the daughter to give the coded letter to TDB. TDB also received a letter when she lived with her grandmother, which contained information that only a family member would know. The letter was sent by someone who was serving a life sentence in prison. Further, petitioner argued that respondent admitted that someone claiming to be his attorney in Maryland had contacted TDB as recently as

two days earlier, which showed that respondent had found TDB and that was why she committed perjury.

Respondent was sworn in and testified that his Maryland attorney had contact with TDB only after TDB had contacted the attorney. TDB had also contacted the prosecutor in the criminal case and provided a sworn affidavit, stating that she testified falsely based on a threat of being placed in a mental institution. Respondent testified that the letter to his other daughter was irrelevant; the coded letter did not contain a threat; TDB initiated the contact with his attorney; and TDB provided her grandmother's address to him.

TDB's LGAL argued that TDB was afraid when she received the letter, and respondent's Maryland attorney said that he did not have contact with TDB. TDB's LGAL argued that she had information from TDB that she was intimidated and that she was testifying falsely because of what she was told to do.

The trial court noted that a hearing was being held outside the presence of the jury with regard to whether there were attempts to tamper with a witness. Respondent argued that TDB, as a party, had a right to testify and that precluding her testimony would be a miscarriage of justice. The trial court admitted all of respondent's criminal convictions for the limited purpose of deciding whether TDB's testimony should be struck. Petitioner argued that respondent not only threatened TDB but also made promises to her, attempting to induce her to lie by telling her how much he loved her. Respondent also wrote TDB a script, which the trial court admitted for purposes of the hearing. Petitioner also introduced a JPay e-mail explaining how respondent came up with the story for TDB. Respondent requested that TDB be given an opportunity to confirm or deny that she had been influenced or intimidated.

The trial court found that the letter and a JPay e-mail were evidence of respondent's attempt to influence TDB's testimony. The decoded letter was also admitted. The child's LGAL again requested a mistrial. Respondent argued that there was no evidence of a threat or intimidation. Respondent also requested a mistrial. The trial court found strong evidence of tampering but delayed its ruling until the next hearing.

At the next hearing, the trial court admitted the letter from another prisoner. Respondent objected, and the trial court ruled that it would not give the letter much weight. The trial court further admitted testimony from respondent's trial in Maryland in which he admitted that he told his mother to lie at a hearing. Petitioner clarified that its position was that TDB should be allowed to testify, her testimony should not be stricken, and she should be subject to full cross-examination. TDB's LGAL argued that, based on statements made by TDB, she believed TDB and respondent had been in contact. Respondent argued that TDB's testimony should not be struck because she was never questioned regarding the truthfulness of her testimony.

The trial court found no direct evidence of witness tampering, but did find evidence of threats to witnesses and attorneys. The trial court found that respondent had no regard for the law; the record was replete with his efforts to feed testimony to the witnesses; the record was also full of his threats; respondent had been convicted of violent offenses; and respondent had violated orders meant to protect the child. The trial court stated that "it is clear from this record that [respondent] will not rest until [TDB] tells the story that he wants her to tell." The trial court

further found that respondent was not credible. The court concluded that there was evidence of tampering, precluded any further testimony from TDB, and struck the testimony that TDB had already given. The court further noted that TDB appeared to weigh each question when she testified. Respondent then moved for a mistrial, arguing that the preclusion of TDB's testimony exhibited bias against him. The trial court denied the request and stated that it had made its ruling. The trial court thereafter instructed the jury to disregard TDB's testimony.

## 2. ANALYSIS

The trial court struck TDB's testimony based on its finding of witness tampering. The trial court relied on several pieces of evidence introduced at the hearing. Respondent argues that the trial court should have questioned TDB regarding whether she had been influenced by anyone. But questioning TDB would have been futile given the evidence that she changed her testimony after having contact with respondent. Moreover, the trial court found substantial evidence of tampering, even without TDB's testimony. Respondent does not challenge the evidence on which the trial court relied. Respondent argues that he was unable to present a defense, but that right is not unlimited. See *People v King*, 297 Mich App 465, 473-474; 824 NW2d 258 (2012). It was within the range of reasonable and principled outcomes for the trial court to exclude TDB's testimony where there was evidence of witness tampering, and the exclusion did not deny respondent the right to present a defense, or a fair trial.

Furthermore, even if the exclusion of TDB's testimony was erroneous, the error was harmless beyond a reasonable doubt. See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). The trial court struck TDB's testimony that she did not believe that there was any possibility that respondent would rape, abuse, or neglect the child and that she did not believe that the child would be at risk of any harm in respondent's care or custody.[3] Nonetheless, at the adjudication trial, petitioner introduced evidence of respondent's Maryland convictions for rape and sexual abuse of TDB. Given the evidence that respondent was convicted of raping and sexually abusing his minor child, the exclusion of TDB's opinion testimony was harmless beyond a reasonable doubt.

For the same reasons, the trial court did not abuse its discretion by denying respondent's request for a mistrial. "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks omitted). "Whether to grant or deny a mistrial is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion resulting in a miscarriage of justice." *Veltman v Detroit Edison Co*, 261 Mich App 685, 688; 683 NW2d 707 (2004) (quotation marks omitted). Given respondent's convictions, no miscarriage of justice resulted from the exclusion of TDB's testimony.

## D. CONTINUATION OF TDB'S LGAL

---

[3] As to this issue, respondent only refers to the stricken testimony, not the precluded recantation testimony, which is addressed in Section III.

Respondent also argues that he was denied due process by the trial court's decision to allow TDB's LGAL to continue representing TDB's interests after she claimed that there was an attorney-client breakdown. As discussed earlier, the trial court ruled that it would appoint TDB a new attorney. However, in resolving the issue initially raised by TDB's LGAL, the trial court decided to strike TDB's testimony and prohibit her from further testifying. After the trial court's ruling, TDB's LGAL remained on the case and continued to represent her without objection. Respondent argues that the trial court should not have allowed TDB's LGAL to continue after she claimed an attorney-client breakdown. TDB's LGAL, however, did not claim a breakdown. Rather, she claimed that there was a conflict of interest due to her belief that TDB was offering perjured testimony. The trial court resolved that conflict by striking TDB's testimony and precluding further testimony. Therefore, respondent fails to establish plain error affecting his substantial rights.

### E. USE OF THE WORD "RAPE" IN FRONT OF THE JURY

Respondent also contends that he was denied a fair trial by the parties' and trial court's use of the word "rape" in front of the jury. Respondent, however, only refers to one instance of the term—when the trial court called him TDB's "convicted rapist father"—which did not occur in front of the jury. Although the record reveals that there were instances in which the word "rape" was used in front of the jury, including during the reading of the petition, during petitioner's opening statement, and during petitioner's closing argument, respondent fails to provide any support for his claim that use of the term was necessarily improper. One of the crimes for which respondent was convicted in Maryland was "second degree rape." While respondent contends that the term was not used only in reference to the Maryland convictions, again, he refers only to an instance that occurred outside the presence of the jury. Moreover, respondent himself repeatedly used the term rape, including during his narrative direct testimony and during his closing argument. Thus, respondent contributed to any error and cannot now claim error requiring reversal. See *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproved of in part on other grounds 469 Mich 967 (2003). Therefore, respondent fails to establish plain error affecting his substantial rights.

### III. COLLATERAL ESTOPPEL

Respondent next argues that the trial court erred and denied him due process by precluding him from re-litigating his Maryland criminal convictions. We agree that the trial court erred by applying the doctrine of collateral estoppel. For the reasons discussed below, however, we conclude that the error was harmless and did not affect respondent's substantial rights.

## A. PRESERVATION AND STANDARD OF REVIEW

Respondent objected to the trial court's application of the doctrine of collateral estoppel to preclude him from challenging his Maryland convictions of child sexual abuse and rape. Therefore, this issue is preserved. See *In re TK*, 306 Mich App at 703. Respondent, however, did not argue that application of the doctrine of collateral estoppel denied him due process. Therefore, respondent's constitutional due process claim is unpreserved.

"This Court reviews de novo the application of a legal doctrine, including collateral estoppel." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). MCR 3.902(A), which applies to child protective proceedings, see MCR 3.901(B)(1), states that "[l]imitations on corrections of error are governed by MCR 2.613." Accordingly, this Court has applied the harmless-error standard from MCR 2.613(A) in cases involving termination of parental rights. See *In re Utrera*, 281 Mich App at 21; *In re TC*, 251 Mich App 368, 371; 650 NW2d 698 (2002). MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Respondent's unpreserved constitutional due-process argument is reviewed for plain error affecting substantial rights. *In re TK*, 306 Mich App at 703.

## B. BACKGROUND

On April 9, 2018, during a discussion regarding the jury instructions, respondent objected to the use of his criminal convictions and to instructing the jury that it could use his convictions alone to find jurisdiction. Respondent objected on the basis that the convictions were being appealed. TDB's LGAL indicated that she had filed a motion to establish that the issue of rape of a minor child had already been adjudicated and that collateral estoppel applied. The trial court stated that the fact that the conviction was being appealed precluded a finding that it was already resolved, but it would hear the motion.

On April 16, 2018, TDB's LGAL argued that the issue of whether respondent had raped TDB had already been decided by the court in Maryland. Petitioner argued that the existence of an appeal did not preclude the application of collateral estoppel. Respondent argued that it was prejudicial for the trial court to rule on the issue without giving him an opportunity to respond. Although respondent agreed that the convictions could be presented, he also argued that he could challenge TDB's testimony in the criminal case because it had come to his attention that TDB's testimony in that case had been coerced. Respondent argued that he did not have a full and fair opportunity to litigate the issue in the criminal case. The trial court stated that it would delay ruling on the issue until the next day.

On April 17, 2018, respondent argued that collateral estoppel did not apply because the same parties were not involved, and mutuality of estoppel did not exist because, had he been found not guilty in the criminal action, it would not have estopped this action. The trial court ruled that the issue of whether respondent raped TDB was litigated in the prior Maryland action. Respondent was a party to that action, and he had his day in court regarding that issue, so it could not be re-litigated. The court further ruled that the fact that the conviction was under appeal did not preclude application of collateral estoppel.

On the first day of the adjudication trial, respondent argued that cross-over estoppel did not apply because petitioner and the state of Maryland could not be considered the same party. The trial court found that this case was distinguishable from *People v Gates*, 434 Mich 146; 452 NW2d 627 (1990), because respondent had been convicted. The court ruled that collateral estoppel could be applied even if the same parties were not involved. It therefore concluded that respondent could not present evidence regarding whether TDB lied at his criminal trial.

Respondent subsequently argued that petitioner and TDB's attorney had knowledge that his convictions were based on perjured testimony and that a hearing should be held to allow TDB to testify regarding whether her testimony was perjured in the criminal case. TDB's LGAL objected and argued that she had not offered any perjured testimony. The trial court reiterated its ruling that it would not allow the underlying convictions to be re-litigated.

In its opinion and order regarding the motion, the trial court found that the first element of collateral estoppel was established because the issue was actually litigated in the Maryland proceedings, a valid and final judgment was entered, and mutuality of estoppel was not required. The trial court found that respondent had a full and fair opportunity to litigate the issues in the Maryland case and that collateral estoppel applied even if a judgment is pending on appeal.

C. ANALYSIS

In *Trakhtenberg*, 493 Mich at 48, our Supreme Court explained:

> Generally, the proponent of the application of collateral estoppel must show "that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." When the application of collateral estoppel "crosses over" the line between a criminal and a civil proceeding, it has aptly been termed "cross-over estoppel." [Citations omitted.]

Our Supreme Court has stated that "the 'full and fair opportunity to litigate' normally encompasses the opportunity to both litigate and appeal[.]" *Monat v State Farm Ins Co*, 469 Mich 679, 685; 677 NW2d 843 (2004); see also *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 716; 848 NW2d 482 (2014) (a decision is final for purposes of collateral estoppel when all appeals have been exhausted or when the time to appeal has expired). With regard to the requirement of mutuality of estoppel, our Supreme Court stated in *Monat*, 469 Mich at 684-685:

> [M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy

to a party, in the previous action. In other words, [t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him. [Quotation marks and citations omitted; alterations in original.]

The doctrine of collateral estoppel should not have been applied in this case for several reasons. First, it was undisputed that respondent had appealed his criminal convictions and that the appeal remained pending. Therefore, collateral estoppel should not have been applied. See *Monat*, 469 Mich at 685; *Bryan*, 304 Mich App at 716.

Furthermore, when the doctrine is used offensively, as in this case by petitioner against respondent, mutuality of estoppel is required. See *Monat*, 469 Mich at 687 n 5 (noting that the Court had only previously "refused to abandon mutuality of estoppel where collateral was asserted *offensively*"). Mutuality of estoppel did not exist in this case because if respondent had been acquitted of the charges in his criminal case, petitioner would not have been bound by that adjudication since a child protective proceeding involves a lower burden of proof. See *Lichon v American Universal Ins Co*, 435 Mich 408, 428; 459 NW2d 288 (1990), superseded in part on other grounds by MRE 410 (concluding that "[m]utuality of estoppel remains the law in this jurisdiction" and barred the defendant insurer's use of the plaintiff's prior criminal conviction to settle an issue in a civil case because the insurer "was not a party to the criminal case and would not have been bound by an acquittal had one resulted").

Moreover, collateral estoppel does not apply if "the facts change or new facts develop[.]" See *In re Hamlet (After Remand)*, 225 Mich App 505, 519; 571 NW2d 750 (1997), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000). Here, TDB's recantation of her testimony from the criminal trial was a new fact that precluded application of the doctrine of collateral estoppel. Accordingly, the trial court erred by applying the doctrine of collateral estoppel and precluding respondent from challenging his Maryland convictions.[4]

Respondent argues that he should have been allowed to introduce TDB's recantation before the jury. Respondent contends that the exclusion denied him due process of law. We conclude that the exclusion of TDB's testimony was not inconsistent with substantial justice, did not violate due process, and did not affect respondent's substantial rights. TDB's recantation was not credible given the substantial evidence of respondent's efforts to influence her testimony. Recantation testimony "is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). As the trial court found, TDB had been in favor of termination until she had contact from respondent. Thus, the trial court was within its discretion to exclude TDB's recantation testimony, and there was no due process violation.

---

[4] We note that petitioner argues that Maryland law applies to this issue. Petitioner did not, however, raise this argument below, and the trial court applied Michigan law.

Further, while TDB's recantation was admissible to impeach her prior testimony, had respondent been allowed to admit evidence of TDB's recantation, petitioner would presumably have been allowed to admit the evidence of respondent's improper contacts and witness tampering. As the trial court found in its opinion regarding termination, respondent wrote two letters to TDB telling her how to testify so that he would not be found guilty. In one letter, he told TDB, "[Y]ou absolutely must not tell the story you told Oakland County." Given that this evidence would have been admissible to rebut the veracity of TDB's recantation, the exclusion of TDB's recantation was not outcome determinative and did not affect respondent's substantial rights.

Moreover, the DNA evidence establishing respondent's paternity of TDB's child was sufficient to establish jurisdiction, even without the evidence of respondent's convictions. And while respondent presumably wanted to introduce his theory that TDB impregnated herself with respondent's semen found in a used condom, the prosecution would have presented evidence to rebut that theory. As the trial court found in its opinion regarding termination, there was overwhelming evidence of respondent's guilt. In one letter to TDB, respondent wrote:

> As I was doing the legal research for this case, I realized there are literally thousands of cases of father daughter relations to the point that it almost seemed common. But as I read the specifics of the cases I recognized that most were based purely on sexual gratification, not love, commitment and destiny, like ours. Our love was never about sex for me. I love you from love. I always have and I always will.

In another JPay e-mail sent from respondent to TDB while he was in prison, he wrote:

> [A]nyway, this guy was tellinm me about his case and it wascrazy as hell. He said his girlfriend's teenage daughter had fallen inove withhim and after he and his girlfriend had sex, she would sneak in and take the used condems, put them on a vibrator, poke a hole in them at the tip and masturbate, squeezingthe sperm inside herself. can yo imagine that.

Thus, the trial court's error and exclusion of the recantation testimony was harmless and did not affect respondent's substantial rights.

IV. STATUTORY GROUNDS FOR TERMINATION AND BEST INTERESTS

Finally, respondent contends that the statutory grounds for termination were not proven by clear and convincing evidence and that termination was not in the child's best interests. We disagree.

## A. STANDARD OF REVIEW

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Beck*, 488 Mich 6, 10-11; 793 NW2d 562 (2010); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## B. STATUTORY GROUNDS FOR TERMINATION

The trial court terminated respondent's parental rights to the child under MCL 712A.19b(3)(b)(*i*), (g), (h), (j), (k)(*ii*), (k)(*ix*), and (n)(*iii*). Those provisions authorize termination under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[5]

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not

---

[5] MCL 712A.19b(3)(g) was amended, effective June 12, 2018. See 2018 PA 58. The current version of MCL 712A.19b(3)(g) replaces "without regard to intent" with "although, in the court's discretion, financially able to do so[.]"

provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:[6]

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

* * *

(n) The parent is convicted of 1 or more of the following, and the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child:

* * *

(*iii*) A federal law or law of another state with provisions substantially similar to a crime or procedure listed or described in subparagraph (*i*) or (*ii*).[7] [MCL 712A.19b(3).]

The trial court found that these grounds for termination were established based on respondent's convictions for the rape of his daughter, TDB, and the principle "that how a parent treats one child is probative of how that parent may treat other children." We agree that respondent's convictions, as well as the fact that respondent's treatment of TDB was probative of how he would treat the instant child, *In re HRC*, 286 Mich App 444, 460-461; 781 NW2d 105 (2009), established several of the statutory grounds for termination stated above. Under MCL

---

[6] The current version of MCL 712A.19b(3)(k) also requires "a reasonable likelihood that the child will be harmed if returned to the care of the parent[.]" See 2018 PA 58.

[7] As noted, this provision now appears as MCL 712A.19b(3)(m)(*iii*). See 2018 PA 58.

712A.19b(3)(b)(*i*), respondent caused the sexual abuse of the child's sibling, and there is a reasonable likelihood that the child will suffer from abuse in the foreseeable future if placed in respondent's home. Under MCL 712A.19b(3)(j), there is a reasonable likelihood, based on respondent's conduct or capacity, that the child will be harmed if she is returned to the home of respondent. Under MCL 712A.19b(3)(k)(*ii*) and (*ix*), respondent sexually abused the child's sibling. Finally, under MCL 712A.19b(3)(n)(*iii*), continuing the parent-child relationship would be harmful to the child given respondent's convictions in Maryland.[8]

Respondent "contests each and every statutory ground." In support of his argument, he relies on his adamant assertion that he did not cause TDB's pregnancy and TDB's testimony at the best-interest hearing. The trial court, however, found TDB's testimony not credible and found overwhelming evidence of respondent's guilt in his criminal case. We must defer to the trial court's credibility determinations. See *In re Miller*, 433 Mich at 337. Thus, the trial court did not clearly err by finding clear and convincing evidence of at least one statutory ground for termination.

## C. BEST INTERESTS

With respect to a child's best interests, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. In assessing a child's best interests, a trial court may consider such factors as a "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). A trial court can additionally consider the length of time a child "was in foster care or placed with relatives," and whether it was likely that "the child could be returned to [the parent's] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). The trial court must also consider a child's placement with relatives. *In re White*, 303 Mich App at 715.[9]

Respondent does not discuss any of the above factors; he merely refers to his claim of innocence, TDB's testimony, and his closing argument. He also argues that he is able to parent from prison. As noted, respondent presented the testimony of TDB that he was a good father, he

---

[8] Given the evidence that respondent provided some financial support to TDB and the child, even while in prison, we question whether the statutory grounds for termination stated in MCL 712A.19b(3)(g) and (h) were established by clear and convincing evidence. However, any error in relying on these additional grounds was harmless because only one statutory ground must be established. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

[9] The trial court considered the child's placement with a relative and found that, given respondent's "extreme criminal behavior," termination was, nonetheless, in the child's best interests.

supported the child, and he would never harm the child. The trial court, however, found that TDB's testimony was not credible because it was influenced by pressure from respondent. Moreover, respondent's arguments regarding his difficult life and self-education do not outweigh the overwhelming evidence that respondent sexually abused the child's sibling, who was also his own daughter. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola